of America. How are you going to answer the two-minute question about the impact of the appellate? Before I begin, the government's counsel, Ms. Wheatley, and I want to bring to the court's attention a recent development in the case. We learned on Tuesday afternoon that the district court granted Mr. Shaw a sentence reduction based on the most recent amendments to the guidelines. Mr. Shaw is currently serving a 75-month sentence. The judge reduced it to 62 months. However, the judge's order does not go into effect until November 1st of this year. We just wanted to bring that... If his sentence is reduced to 62 months, by November he'd be eligible for release, but the case wouldn't be moot at this point, is that right? That is our position, Your Honor. Because he's served about five and a half years, because at the time of his sentencing he'd already done 18 months on his federal sentence, is that right? That's correct, Your Honor. So we don't feel that the judge's order moots the case. Well, I don't think it would. I mean, probably the government doesn't take that position either. I just wanted to make sure I knew where we were. Yes, Your Honor. And Your Honor, may I reserve three minutes for rebuttal, please? Sure. Thank you. May it please the Court, Mr. Shaw should be granted relief under Section 2255 because his sentence violates the law as set forth by the Supreme Court in Dorsey. Dorsey has a very significant impact on this case, and I think the best way to see Dorsey's impact is to ask, what would have happened if Dorsey had been decided a week before Mr. Shaw was sentenced? Well, first of all, the district judge would have said the 120-month mandatory minimum is inapplicable. The mandatory minimum now is lowered to 60 months. So the applicable guideline range becomes 84 to 105 months. And that's important because that guideline range should have been the starting point for the substantial assistance reduction. We submit that Dorsey has a two-fold effect here. First of all, it obviously lowered the mandatory minimum from 120 months to 60 months, and it effectively lowered the guideline, Mr. Shaw's guideline range, to 84 to 105 months. But his guideline range reminds us, I mean, other than for the effect of the mandatory minimum. Right. When he was sentenced back in 2011, the guideline range would have been 84 to 105 months. Now, that's the guideline range that had already been lowered by the Sentencing Commission in response to the fair... If he were sentenced today, the guideline range would be 84 to... 84 would be the bottom range. Well, but for the... But for amendments, subsequent amendments. Right. But the problem, I think, with this case, Your Honor, is, and I think this is what the district court did, of course, the argument was, after Dorsey, and the 120-month mandatory minimum was no longer applicable, that lowered the guideline range. It lowered it to 84 to 105 months. The district court said, well, the guideline range really didn't change. So what's the problem? And the problem is this. The starting point for the district court's analysis here was the mandatory minimum of 120 months. That's where it made the... Well, I want to test you a little bit on that, and I want to make sure we're in agreement about what was going on in this case. Yes, Your Honor. The 3553E motion that was made meant that effectively 120 months was not the starting point. Once that was made, there was no statutory mandatory minimum operative in this case. Not 10 years, not 5 years, not anything, right? No, respectfully, Your Honor, I disagree with you. Because they used... I understand that when the... The district court did not have to sentence at any particular level. I mean, the guideline range remained the same, but the district court was theoretically free to grant a variance on any basis had one been requested by the defendant, and he did, in fact, grant a variance on the only basis requested by the defendant, correct? That is correct, Your Honor, yes. So, I mean, the district court, the only point I'm making is the district court was not limited in any way in this case in his selection of sentence other than by an advisory guideline range, which as you know is just that. It's not an ultimate limitation, right? That is correct, yes, Your Honor. But our whole point is even if the mandatory minimum is not applicable because of the 3553E motion, the substantial assistance reduction motion, when the government made that motion, they recommended a 36-month reduction, so Mr. Shaw's sentence went from 120 months, the mandatory minimum, down to 84, which would have been the applicable guideline range, but for that mandatory minimum. So our whole point is that maybe that mandatory minimum did not appear to be the starting point for a sentence reduction, but it actually was... Mr. Shaw is also the district judge who handled the 2255, as is common, correct? Yes, Your Honor. There's case law from the Supreme Court on down that it's not inappropriate for the district court to take into account what he is aware of from the original record in the handling of the 2255, right? That is correct, yes. There's no explicit reference by the district court to the earlier handling of the case, but it would be normal for a district judge, if the district judge thought that his discretion was going to be exercised differently upon resentencing, it would have been typical for the district judge to have taken that into account in applying the appropriate standard in this context, wouldn't it? I think so, Your Honor, but again, my point is, I think that the district court got off to the wrong starting. Well, let me ask you something else about this case. I'm trying to take all the facts into account, and at first blush, the arguments about might have some merit, and that you might be entitled to a rewind, but the more you look at this case, the less I became convinced that that was in fact the case. This was a pretty, I thought initially, I sort of reacted negatively to the magistrate judge's speculation about what the government would have done on remand. However, when I read the sentencing transcript, here's what I found, and let's see if you and I are in agreement on this. This was first, Mr. Shaw got a pretty good deal. He was subject to 851 enhancements, part of the plea agreement. The government did not seek those, right? That's correct. The 3553 e-motion that was made was, I don't know if you'll agree with my characterization of this, but in all my years as a federal judge, which are getting to be considerable, I have never seen a more perfunctory 3553 e-motion, and would you agree that it was fairly perfunctory? It was based on his proffer. That doesn't happen too often. It was clear the prosecutor could not, even when pressed by the district court, itemize any significant cooperation. My inference from that would be that the prosecutor just felt that he ought to free this defendant from the strictures of the mandatory minimum, but that there wasn't really anything else to take into account. Your Honor, perhaps that's one way to look at it. I don't concede that that's... You don't have to concede that, but I haven't said anything that's inaccurate about this transcript, have I? No, it was a very short cryptic discussion, but the fact of the matter remains, the government characterized whatever Mr. Shaw said, whatever information he provided, they characterized it as helpful, helpful to the tune of a 36-month reduction. There must have been something there, something of some... Like maybe the plea agreement, which said the government recommends the low end of the guidelines? Well, that too, but then, may I refer the court to... I'm going to try not to interrupt you anymore. No, that's fine, Judge. I'm glad that I want to be on the same page as the court. But in the plea agreement itself, and I'm referring to paragraph 12 of the plea agreement, and this is on page 313 of the record. Paragraph 12 starts off, nothing in this agreement is going to protect the defendant from prosecution from a variety of offenses, most of them dealing with false statement, perjury. And it goes on to say, should the defendant commit any of those offenses, and I quote, during the cooperation phase of this agreement, end quote. So obviously, there was some discussion during the plea agreement to Mr. Shaw cooperating and providing information. He did exactly that. He provided that information, and at least in the prosecutor's view, even if it was a cryptic view, he provided 36 months worth of information, or at least enough to get a 36 month reduction. And we would submit that just based on Dorsey, when that first mandatory minimum, that 120 month mandatory minimum is no longer applicable, the guideline range became 84 to 105 months. The sentence reduction should have been calculated from that 84 to 105 months. And I say that because, as we cited in our brief, this court's case law states that where the guideline range is greater than the mandatory minimum, and it certainly was after Dorsey, then the guideline range becomes the appropriate starting point for the sentence reduction. Isn't this somewhat like the Calhoun case that was recently, a 2014 case, in the same context, a 2255, where Calhoun found that because of the particular facts of the case somewhat similar, the plea agreement itself became ambiguous. And isn't there an ambiguity here that at the position where we are now, the language of that plea agreement, the lowest end of the applicable guideline range, could be read to say that the government could insist on the 84 month sentence, or the government could say that it would be satisfied with a sentence that falls between 60 and 84 months. And if there is that ambiguity, doesn't it need to go back to the district court to resolve that? Yes, Your Honor. I mean, if there's an ambiguity in the plea agreement, the ambiguity is resolved against the government. But there's no new guideline range. That remained the same. But again, looking at the plea agreement here, Your Honor, the government recommended a sentence at the lowest end of the applicable guideline range. When Mr. Shaw was first sentenced, the guideline sentence was 120 months, because of the mandatory minimum. After Dorsey, the applicable guideline range was... As soon as the 3553E was made, the guideline range became 84 to whatever. And today, it's 84 to whatever, except for subsequent amendments. Right. And the government was recommending a sentence at the lowest end of that applicable guideline, which would have been 84 months. And our point is that that's the starting point for the substantial assistance reduction. It was the starting point at his sentencing, though. Well, in light of Dorsey, it should have been... And the government didn't make a 5K1 because it felt 84 months was the appropriate sentence. Respectfully, Your Honor, I think that's speculating about what the government had intended. Well, the government says that in the transcript. I mean, it's explicit. That's not an inference drawn from the transcript. I mean, the government says so. The court presses the government counsel extensively on why a 5K1 isn't being made. Oh, I'm sorry, Your Honor. Yes. This was a 3553 motion rather than a 5K. Yes, Your Honor. You're right. I see the amount of time. Are there any more questions? If not, you'll have your rebuttal time. Thank you. Police, the court. I'm Monica Wheatley on behalf of the United States. And this case boils down to this. 2255 is the vehicle for challenging if there's been an error as to the mandatory minimum. It seems like in Mr. Shaw's reply brief there was some question about whether the United States position was whether 2255 is the appropriate vehicle. Yes, we believe it's the appropriate vehicle. But to win a 2255, Mr. Shaw has to show one of four things. What Mr. Shaw shows is that the court and the parties were under the misunderstanding at the time based on the law as to what the statutory mandatory minimum was. That misunderstanding does not equal a fundamental error for 2255 purposes because the 3553E motion took the mandatory minimum out of play. As the court's aware, and I don't know how much of the background you even need or want based on all this post-conviction, the statutes that are here for 2255, 3553E, the 3582s, what happened here is the case, the posture it's at now for a 2255, there has to either be a constitutional error, there's none alleged here, there has to be that the court was without jurisdiction to sentence, we don't have that, that the sentence was outside the statutory maximum or the statutory limits, we don't have that. So the question is whether or not it's otherwise available for collateral relief, and that's when there's a fundamental error that, you know, a miscarriage of justice, so substantial an injury is that it violates due process, and the only error or the position Mr. Shaw has is that the fundamental error is that Dorsey did not apply. We all now know that Dorsey should have applied, but in reality there's no fundamental error in this case because the mandatory minimum was of no consequence. The court was available to sentence not only at a 60-month mandatory minimum, but a zero mandatory minimum because of the 3553E. And when there has been a genuine error of a Dorsey violation, 2255 would be the vehicle, but that's not the case here because there was the 3553E. There is all the 3582 analysis in Mr. Shaw's brief and even in the magistrate's decision, his position of the United States that this court doesn't have to go into all of that, into what the policy statements are as to what effect the mandatory minimum had on the guideline range because this is not a 3582 case where we are going back and looking at whether the guidelines were amended and needs to be changed. The Fair Sentencing Act, in fact, had no effect on Mr. Shaw's case, and in reality then there's no justification for 2255 relief. What if the plea agreement itself now has an ambiguity in it? Does the government get to say, that doesn't really matter, here's what we would have done anyway, or do you have to go back down and examine it at the district court level? If the ambiguity had some effect on the decision, Your Honor, I would think that it might need to be remanded, but it doesn't in this case because the low end of the guideline range, if that's what you're saying the ambiguity is, and I know the case you're talking about because you concurred in that case, but the ambiguity here is what is the low end of the guideline range, or arguably the ambiguity, but the guideline range did not change. The guideline range was 84 months to 105. Is the ambiguity that, or is the ambiguity what the government has promised in the plea agreement and what the intention was, whether you would have insisted on the 84-month sentence, or whether, based on that language, the language indicates satisfaction on the part of the government with a sentence that would fall between the 60 and 84? The plea agreement said a sentence no less than the statutory minimum and a sentence at the low end of the guideline range and no 851 notice. If the 851 had been filed, he would have been facing 240 versus 120, and now 120 rather than 60. But the United States, as Judge Gibbons pointed out at the sentencing hearing, was adamant that they were not, that they, the United States, was not interested in going anything below 84. The district court even commented that 84-month sentence was fair, eminently fair, or some word like that. There was never any question that the United States did not intend. There's no ambiguity. Eighty-four months was the guideline range, and no less than the statutory mandatory minimum was in the plea agreement, but added, the United States added at the sentencing hearing that it would agree to go below the statutory minimum and made the 3553E motion without much support, obviously, but. I guess the, you know, we have sent many cases back for a redo in various contexts given all the various changes in sentencing over the last, well, 10 years now. And we've done it because, so that the court could take into account changed circumstances, and, you know, we've looked at whether it seemed reasonable to think that a different sentence might be given. That's not our standard. No, and the court was given the opportunity here to do that. In the 2255 situation, or in the 2255 motion, the court was given the opportunity to say, do I want to go any lower, then made a point of saying the United States does not want to go any lower. There's nothing changed here. The court knows at the time they're ruling on the 2255 what Dorsey has said and still does not want to go any lower. And remember, Your Honors, that what we're talking about here is 2255. This is not a 3582 where there might be some question what the court starting point would be in doing the departure or where the guidelines should be. This is for only a fundamental error. At the standard for the particular criteria for granting a 2255 that we are looking at, the complete miscarriage of justice language, have we specifically equated that with a denial of due process in our case law? You mentioned due process in your comments earlier, and I have a quote from one of our cases in front of me, and it doesn't use the due process language. And I just wanted to make sure that wasn't an addition on your part and that it is explicit in the case law. The quote I have is that there's a complete miscarriage of justice or error so egregious that it equals of due process violation. That's that Todaro, Doyle, the usual boilerplate kind of language for 2255. I just didn't have the boilerplate in front of me. But that would be – Do you understand complete miscarriage of justice and amounting to a due process violation to be something different, or do you understand it to be basically the same thing? I mean, is complete miscarriage of justice something lesser? I wouldn't say it's necessarily lesser, but I'd say they're different. There could be a miscarriage of justice without a due process violation. But the point here, and I know I'm repeating myself, is that there was none of that here. And I would just point out, too, this case, as you see from the record, has had such a kind of convoluted procedural history. There was the direct appeal, the 3582. Then the direct appeal and the 3582 appeals were consolidated, and then there was additional briefing for Dorsey, and then the parties, but two different counsel, moved to voluntarily dismiss those appeals, where Dorsey could have been considered both in a direct appeal kind of situation since they were consolidated. So although we haven't raised it in our brief and probably should have raised it earlier, as the court's aware with 2255s, if something's not raised on direct appeal, it is deemed waived unless there's ineffective assistance of counsel, which is not alleged here, or if it wasn't raised and there's cause and prejudice. But you didn't argue procedural default, so we're beyond that issue. Yes, I guess we are, Judge, but I was still just pointing it out and looking at whether or not this error is so fundamental that 2255 relief is warranted. It was an issue that could have been addressed earlier, but the defendant voluntarily dismissed. Two different lawyers moved to voluntarily dismiss their appeals, and it wasn't ruled on then in a context where he perhaps would have had a more favorable standard. But regardless of the standard here, what we're left with is that the mandatory minimum that was changed by the FSA had no consequence to Mr. Shaw here because of the 3553 motion. Do you have any information about Mr. Shaw's release date? His sentence was reduced to 62 months based on the 782, excuse me, the drugs minus two amendment. As you know, November 1st is the effective date for that amendment. The probation's memorandum of recalculation in that current 3582 says his release date is January 2016, but I think that was based on before the additional reduction. So now the question really is when did he go in custody, and I don't know. It's in the sentencing transcript, but I can't remember. He'd already been in custody. Like 18 months. He'd already been in custody 18 months at the time he was sentenced, and he was sentenced in February of 2011. But he was only given credit for nine? No, no. That had nothing to do with the reduction the district court gave him. He had already actually been in federal custody for 18 months, and, of course, he would have gotten credit for all that. The district court's adjustment, as I understand it, was for a time that there was a delay in he'd been picked up on state probation parole charges. There was some delay in getting the federal case filed, and the credit that the district court gave him or the variance or whatever, the down to 75 months, was as a result of prior delay and didn't affect the 18 months. So at this point, he's been in custody about five and a half years. Okay. I think. Well, that's probably right. So is it your position that when the new change comes into effect in November, you think that's the release date? Yes. He will be out November 1st. The question is whether if he were granted the relief he wanted in this case, would he be out before November 1st? Probably, if he were entitled to it. But you'd have to get him re-sentenced. Well, that's right, too. I mean, you know. So why isn't this moot? Because he'd be entitled to be released before November 1st. And you think that process could be undertaken and completed between now and November? Probably. In reality, no. But I'm not sure that's the way we'd look at it. If there really was an error. Well, let's be practical. Is that the way to look at it? Let's be practical, Judge. No. By the time everything gets done, it will probably be time for him to get out. But if there was really a legal error that needed to be addressed, it would need to be addressed, I would think, if there was something that needed to be corrected, even as a practical matter, unless by the time you all were issuing your opinion, November 1st had already come and gone. Then I believe it would be moot. But at this point, I don't believe it is moot. But as a practical matter, I can understand the concern. But I really have nothing else to add other than just to say the 3553E changed everything here. And the language in all the cases, we didn't, the United States did not cite those cases in the brief. But the importance of a 3553E, rendering a mandatory minimum inoperative, is really what changes everything here. And if I have no other questions, I'll thank the Court very much. Thank you. Thank you all. Your Honors, I just have a couple of points to make. I have a practical question. Yes, Your Honor. It seems to me there's a practical solution to this. It seems to me that this is not going to be resolved and resentenced before November. I'm struggling with why we can't agree that this case is moot and let him be released in November. Your Honor, I respectfully disagree that this cannot be resolved before November 1st. I think it can be. I think if the Court issues an opinion saying that there's remanding for resentencing, I'm sure that the district judge and the parties will work to keep that November 1st date in mind. If Mr. Shaw is entitled to be released before then, I'm sure that the parties in the Court will work to ensure that that happens. So I'm not willing to, I understand. Maybe the practical, well, I would hope so, but the practical reality of timeframes that we see here very frequently does not bear out your expectation. Well, the other thing about this is, you know, I mean, just from a practical standpoint, there's nothing for us to do with this. I don't know of anything, any use we could make of this in our deliberation. But if the chances that the district court would have rethought this sentence were not very great to begin with, what do you think the chances are the district court is going to rethink this sentence now? I would say probably not very great. So, I mean, practically speaking, we're, I mean, we're sort of, it may be an exercise without much impact on anything. But I don't know of any way to factor that into the analysis unless Mr. Shaw were willing to just await his release date. Well, you know, it seems to me, Your Honor, if his release date could be accelerated, he certainly would want that. And I would point out to you. I don't know if the government has any way of doing that since the, I think the selection of the November 1 date was the result of a lot of compromises and a lot of effort to try to help the Bureau of Prisons get ready and the courts get ready. But I don't know. Anyway, go ahead and make your point. According to the Bureau of Prisons website, his release date is February 17th of 2016. But, of course, now it would be 11-1-15. And our position is that even the 62-month sentence is too long. So if there are no other questions, Your Honor, I respectfully ask the court to vacate the judgment and remain for resentencing. Thank you. We appreciate the argument both of you have given, and we'll consider the case carefully.